IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | ) ) ) ) |
| Plaintiff, | ) Civil Action No. 5:21-cv-00042 ) |
| v. | ) **MEMORANDUM OPINION** ) |
| FAITH M. STEEN, *et al.*, | ) By:   Hon. Thomas T. Cullen ) United States District Judge |
| Defendants. | ) |

On November 25, 2019, Douglas H. Steen passed away. At the time of his death, Steen held a life insurance policy through The Lincoln National Life Insurance Company ("Lincoln"). At least three parties have told Lincoln that they intend to make a claim under that policy. To avoid adjudicating these conflicting claims, Lincoln has moved the court to allow it to interplead the funds into the court's registry so that the other parties can make their claims to the court without further liability to Lincoln (ECF No. 22), as well as for default judgment against one of the three parties (ECF No. 25). For the reasons below, the court will grant both of Lincoln's motions.

### I.   BACKGROUND

Steen passed away on November 25, 2019. (*See* ECF No. 1-4, at 2.) At the time of his death, he had a life insurance policy, issued by Lincoln, through his employer that became payable at his death. (*See* ECF No. 1-2, at 7, 14.) The Employee Retirement Income Security Act of 1974 ("ERISA") governs the policy's terms. (*See id.* at 23 (incorporating ERISA's exhaustion requirement); *see also* ECF No. 1-7.) Steen's partner, Carol Mautino ("Mautino"),

is the policy's primary beneficiary.[1] (ECF No. 1-3.) His daughter, Faith M. Steen ("Faith"), is the policy's contingent beneficiary. (*Id.*)

Two parties have made claims on this policy, and a third arguably has a legal right to do so. Faith submitted a claimant's statement to Lincoln the day after Steen passed away. (*See* ECF No. 1-5, at 2.) During a January 8, 2020 phone call, Mautino told Lincoln that she also intended to submit a claim. (Compl. ¶ 17 [ECF No. 1].) And, after Steen's burial, Faith assigned some of the policy's benefits to Stover Funeral Home & Crematory, Inc. ("Stover") for burial services. (*See* ECF No. 1-6, at 2.)

Lincoln filed a complaint for statutory interpleader. (ECF No. 1.) Statutory interpleader allows insurers, under certain circumstances, to give the contested policy benefits to the court and let the court sort out the competing claims. Both Faith and Mautino answered Lincoln's complaint. (ECF Nos. 9, 12.) Stover did not file a timely responsive pleading, and the clerk entered default against Stover on August 11, 2021. (ECF No. 19.) To date, Stover has not appeared in this action.

## II.   ANALYSIS

### A. Statutory Interpleader and Jurisdiction

"Interpleader is a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund." *Sec. Ins. Co. of Hartford v. Arcade Textiles, Inc.*, 40 F App'x 767, 769 (4th Cir. 2002) (per curiam). In other words, federal

---

[1] Although the beneficiary designations state that Mautino is Steen's "spouse," the record clarifies that the two were never legally married. (*See* ECF No. 1-8 at 4–5 ("My wife and I were never legally married. . . . We never signed any documents or filed any papers with any city, county, state, or federal entities. We never filed taxes together and had no common property . . . .").)

law does not force insurance companies to adjudicate competing claims over an insurance policy, risking additional litigation from parties unhappy with their determinations or liability for the insurance companies if they make an incorrect judgment. Instead, it authorizes interpleader, which protects insurers from "multiple, inconsistent judgments" and relieves them "of the obligation of determining which claimant is entitled to the fund." *See id.*

Interpleader actions typically proceed in two stages. "In the first stage, [the court] must determine whether the stakeholder is entitled to invoke the Court's interpleader jurisdiction to compel the plaintiffs to litigate their claims to the stake in one proceeding. In the second stage, [the court] must determine the respective rights of the claimants to the stake." *Fed. Ins. Co. v. Parnell*, No. CIV 6:09CV00033, 2009 WL 2848667, at *4 (W.D. Va. Sept. 3, 2009) (alterations original).

So the court begins its analysis by examining its jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). At any stage, if the court determines it does not have jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3); *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 303 (4th Cir. 2017). For the reasons that follow, the court has jurisdiction over this action.

Lincoln asserts two independent bases of jurisdiction: the federal interpleader statute and the federal question statute. Jurisdiction under the federal interpleader statute "requires (1) minimal diversity between '[t]wo or more adverse claimants,' (2) a value of $500 or more in controversy, and (3) a deposit in court by the plaintiff of the amount in dispute or a bond." *AmGuard Ins. Co. v. SG Patel & Sons II LLC*, 999 F.3d 238, 244–45 (4th Cir. 2021) (citing 28 U.S.C. § 1335(a)) (cleaned up); *see also* 16A Steven Plitt et al., *Couch on Insurance*, § 229:63 (3d

ed. 2021).

The first two requirements are met. First, Faith (a citizen of Virginia) is minimally diverse from Mautino (a citizen of Pennsylvania). *Id.* at 245 (explaining that minimal diversity "means that at least two claimants are not co-citizens, even if others are"). And because Steen and Mautino have both told Lincoln that they intend to claim Steen's policy, Lincoln "possesses a bona fide fear of adverse claims to [Steen's life insurance benefit]." *Id.* at 249 (cleaned up); *see also California v. Texas*, 457 U.S. 164, 166 n.1 (1982) (per curiam) ("[T]o bring an interpleader suit, 'a plaintiff need not await actual institution of independent suits; it is enough if he shows that conflicting claims are asserted and that the consequent risk of loss is substantial.'") (quoting *Texas v. Florida*, 306 U.S. 398, 406 (1939)). Second, the disputed policy is worth $50,000, satisfying the $500 amount in controversy requirement. (ECF No. 1-2, at 7.)

The third jurisdictional requirement is also met, although less obviously. Statutory interpleader requires "the plaintiff [to] deposit[] [the disputed] money or property . . . into the registry of the court." 28 U.S.C. § 1335(a); *see also AmGuard*, 999 F.3d at 244–45. Lincoln has not made this deposit yet; its instant motion seeks permission to do so. (*See* ECF No. 22, at 1 (requesting an Order "permitting Lincoln to deposit into the registry of this Court the interpleaded funds").)

A strange feature of statutory interpleader actions is that the presiding courts begin handling them before jurisdiction has been perfected. But this oddity is well recognized, and courts invite plaintiffs to perfect jurisdiction in these cases as a matter of course. *U.S. Fire Ins. v. Asbestospray, Inc.*, 182 F.3d 201, 210 n.4 (3d Cir. 1999) (Alito J.) (concluding that the district court "erred in dismissing the complaint without affording an opportunity to cure"); *Wayzata*

*Bank & Tr. Co. v. A & B Farms*, 855 F.2d 590, 593 (8th Cir. 1988) (holding that an appropriate deposit made on a limited remand perfected jurisdiction); *Lincoln Gen. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 425 F. Supp. 2d 728, 742 (E.D. Va. 2006) (failure to deposit the disputed funds "is a jurisdictional defect that a stakeholder may easily cure and is therefore insufficient to defeat an otherwise appropriate statutory interpleader action"); *see also* 7 Mary Kay Kane, *Federal Practice & Procedure* § 1716 (3d ed. 2021) ("The case will not proceed unless this jurisdictional requirement is satisfied, although the court generally will give the stakeholder a second opportunity to comply before dismissing the action.").

This is not to suggest that the third requirement is a nullity. Dismissal for a lack of subject-matter jurisdiction is appropriate if the plaintiff refuses to perfect the court's jurisdiction by depositing the disputed funds with the court. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Scott*, No. 08-0819, 2010 WL 4068917, at *5 (W.D. La. Oct. 14, 2010); *see Williams v. Lincoln Nat'l Life Ins. Co.*, 121 F. Supp. 3d 1025, 1032–33 (D. Or. 2015) (resolving to dismiss the complaint unless plaintiff made an appropriate deposit within 14 days of the order).

Here, though, Lincoln is seeking, without prompting, permission to perfect jurisdiction. It has assured this court of its intention to do so even since it filed the operative complaint. (Compl. ¶ 21.) Although a deposit is not already in the court's registry, the court has jurisdiction to adjudicate that request, just as it has jurisdiction to dismiss complaints over which it undisputedly lacks jurisdiction. Therefore, the court has jurisdiction over this action under 28 U.S.C. § 1335, the federal interpleader statute.[2]

---

[2] Alternatively, the court also has federal question jurisdiction over this matter, although this is similarly unclear from the face of the complaint. To start, federal courts "have original jurisdiction of all civil actions arising under the Constitution laws, or treaties of the United States." 28 U.S.C. § 1331. And ERISA creates a civil

Because the court's jurisdiction under the federal interpleader statute is proper, Lincoln's consent motion to deposit funds and to be dismissed (ECF No. 22) will be granted.

### B. Default Judgment

Lincoln is also moving for default judgement against Stover. Faith paid for Steen's burial by assigning some of the policy's benefits to Stover. (*See* ECF No. 1-5.) Lincoln named Stover as a defendant in its interpleader complaint and served Stover with the complaint and a summons on June 14, 2021. (ECF Nos. 1, 7.) Accordingly, Stover's responsive pleading was

---

action for plan fiduciaries seeking "appropriate equitable relief" "to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132. That leaves three questions for Lincoln to answer: Is Lincoln an ERISA fiduciary? Is interpleader an equitable remedy? And did Lincoln bring this action to enforce ERISA's terms?

The second question is the easiest to answer. "Interpleader is an equitable remedy." *Arcade Textiles*, 40 F. App'x at 770.

The first question requires the most analysis. Lincoln is a "functional fiduciary" under ERISA "to the extent" that it "exercises any discretionary authority or discretionary control respecting management . . . or disposition of [the plan's] assets." 29 U.S.C. § 1002(21)(A); *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 276 (4th Cir. 2019); *see Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033–34 (9th Cir. 2000) ("When an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims, the company is an ERISA 'fiduciary' under 29 U.S.C. § 1002(21)(A)(iii)."). The relevant policy gives Lincoln discretionary authority over its processing of life insurance policy claims in at least three ways. *See Dawson-Murdock*, 931 F.3d at 276 (quoting 29 C.F.R. § 2509.75-8 (D-3) and explaining that "persons who hold [] positions" that "have discretionary authority or discretionary responsibility in the administration of the plan" are fiduciaries). Under the heading "CLAIMS PROCEDURES," Steen's insurance policy gives Lincoln discretion to require a lawful autopsy of the deceased, demand additional information from the claimant, or give itself an extension of its default 15-day timeline for processing claims. (Insurance Policy at 21–23.) Indeed, the very decision to ask this court for interpleader rather than decide on a distribution of the contested benefits, highlights the discretion Lincoln has to affect a proper adjudication of insurance claims. And it has been Lincoln that has answered Faith's questions about the policy. (Dec. 16, 2019 Email at 2–4); *see Bayona*, 223 F.3d at 1033. At least four circuits have held that insurance companies moving for interpleader in order to facilitate the resolution of claims under employer-administered life insurance policies are acting as ERISA fiduciaries. *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 273, 276 (3d Cir. 2007); *Metro. Life Ins. Co. v. Bigelow*, 283 F.3d 436, 439–40 (2d Cir. 2002); *Bayona*, 223 F.3d at 1033–34; *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 418 (6th Cir. 1997). That is precisely what Lincoln is doing here.

Having concluded that Lincoln is an ERISA fiduciary, the third question—whether Lincoln brought this interpleader action to enforce ERISA's terms—becomes straightforward. ERISA demands that a fiduciary "shall discharge [its] duties with respect to a plan" "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]." 29 U.S.C. § 1104(a)(1)(D). Pursuant to that statutory duty, Lincoln brought this lawsuit to ensure its compliance with the disputed policy. (*See* Compl. ¶ 19.)

For these reasons, the court has federal question jurisdiction over this matter under 28 U.S.C. § 1331.

due on July 5, 2021. (*See* ECF No. 7; Fed. R. Civ. P. 12(a).) Stover has not filed a responsive pleading. The clerk entered default against Stover on August 11, 2021. (ECF No. 19.) To date, Stover has not appeared in this action.

"The law disfavors default judgments as a general matter." *Colleton Preparatory Acad. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Yet "default judgment is available when the adversary process has been halted because of an essentially unresponsive party." *Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006). "To obtain a default judgment, a party must first seek an entry of default under Federal Rule of Civil Procedure 55(a)." *Pelyn Tr. v. Fair Exch. Tr.*, No. 3:08-cv-287, 2009 WL 2912521, at *1 (W.D.N.C. Sept. 3, 2009). The clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). "The entry of default is a procedural prerequisite to the entry of a default judgment." *Eagle Fire, Inc., v. Eagle Integrated Controls, Inc.*, No. 3:06cv264, 2006 WL 1720681, at *5 (E.D. Va. June 20, 2006). After the clerk enters default, the party may seek a default judgment under Rule 55(b), which "authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." *United States v. Moradi,* 673 F.2d 725, 727 (4th Cir. 1982) (quoting Fed. R. Civ. P. 55(a)).

Lincoln has complied with these requirements. The insurer served process on Stover on June 22, 2021. (ECF No. 7.) After Stover failed to respond, Lincoln moved for an entry of default on August 11, 2021, and the clerk entered default later that day. (ECF Nos. 18, 19.) Lincoln moved for default judgment 13 days later. (ECF No. 25.) Stover's counsel has not entered an appearance in this case, Stover never responded to Lincoln's complaint, and Stover

has not filed an opposition to Lincoln's motion for default judgment. Taken together, Stover has "failed to plead or otherwise defend" the case. *See Pelyn Tr.*, 2009 WL 2912521, at *1 (finding that a failure to appear after being served process warranted a default judgment).

Therefore, Lincoln's motion for default judgment (ECF No. 25) will be granted.

### III. CONCLUSION

Lincoln's consent motion to deposit interpleader funds and to be dismissed (ECF No. 22) and Lincoln's motion for default judgment against Stover (ECF No. 25) will be granted. Mautino's motion for judgment on the pleadings (ECF No. 15) remains pending. A briefing schedule specific to that motion is set forth in the accompanying Order.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties and all counsel of record.

**ENTERED** this 1st day of November, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE